D|F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MIKE COLON,

                Plaintiff,

        -against-

LINCHIP LOGISTICS LLC, PANTHER II
TRANSPORTATION, INC, and CHARLES
RICHARD LAWRENCE,

                Defendants.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**16-CV-3875 (NGG) (RML)**

NICHOLAS G. GARAUFIS, United States District Judge.

In this diversity action, Plaintiff Mike Colon brings claims against Linchip Logistics LLC, Panther II Transportation, Inc, and Charles Richard Lawrence, asserting damages arising from a car accident. Defendants have moved for summary judgment (Mot. for Summ. J. ("Mot.") (Dkt. 24)), and Plaintiff has moved for sanctions, objecting to Defendants' introduction of a previously undisclosed expert's affidavit. (Mot. for Sanctions (Dkt. 29).) For the following reasons, Defendants' motion for summary judgment is DENIED and Plaintiff's motion for sanctions is GRANTED.

I.    **BACKGROUND**

    A.    **Facts**

The court constructs the following statement of facts from the admissible evidence the parties have submitted.[1] Except as otherwise noted, the following facts are undisputed. All evidence is construed in the light most favorable to the non-moving party with all "reasonable inferences" drawn in its favor. ING Bank N.V. v. M/V Temara, IMO No. 9333929, 892 F.3d 511, 518 (2d Cir. 2018).

---

[1] Neither party submitted a statement of facts pursuant to Local Rule 56.1.

1

Plaintiff is a citizen of the State of New York. (Not. of Removal (Dkt. 1).) Defendant Linchip Logistics LLC is a Texas corporation with its principal place of business in Corsicana, Texas. (Id.) Defendant Panther II Transportation, Inc. is an Ohio corporation with its principal place of business in Medina, Ohio. (Id.) Defendant Charles Richard Lawrence, Jr. is a citizen of the state of Texas, and resides in Greenville, Texas. (Id.)

This action arises out of a motor vehicle accident that occurred on September 19, 2015. (Aff. of Richard B. Polner in Supp. of Defs. Mot. for Summ. J. ("Polner Aff.") (Dkt. 24-1) ¶ 3; Pl. Mem. in Opp'n to Defs. Mot. for Summ. J. ("Pl. Mem") (Dkt. 27) at 2.) Both Plaintiff and Defendant Charles Richard Lawrence were driving north on Guy R. Brewer Boulevard immediately before the accident. (Pl. Mem. at 2, 4; Police Accident Report (Dkt. 24-9).) The parties dispute whether, at the time of the accident, Guy R. Brewer Boulevard had one or two lanes of traffic in each direction: Plaintiff states that "Guy R. Brewer Boulevard is a two way north/south street with two lanes on each side" (Pl. Mem. at 2), while Defendants insist that "the northbound along Guy R. Brewer Boulevard consist[s] of one traffic lane" (Polner Aff. ¶ 7; see also id. ¶¶ 6, 8-9). All parties agree that there was enough space for two vehicles to drive side-by-side in the northbound direction. (See id. ¶¶ 6-7; Pl. Mem. at 2.) Defendants maintain that the additional space on the right-hand side of the road is for parking only, and that driving is not permitted in that area. (Mem. in Support of Summ. J. ("Mem.") (Dkt. 24-2) at 3.)

At the time of the accident, Lawrence was driving a loaded truck owned by Defendant Linchip Logistics, LLC ("Linchip") (see Pl. Mem. at 3; Compl. (Dkt. 1-1) ¶ 12; Answer (Dkt. 8) ¶ 2),[2] and driving as an independent contractor with Defendant Panther II Transportation, Inc.

---

[2] In his deposition, Lawrence stated that he owned the cab portion of the truck at the time of the accident. (See Tr. of Apr. 13, 2017 Dep. of Richard Lawrence, Jr. ("Lawrence Dep.") (Dkt. 24-11) at 51:7-52:20.) However, all other filings appear to agree that Linchip owned the truck, and Linchip is listed as the owner on the police report (Police Accident Report.) Regardless, ownership of the truck is not relevant to resolution of the present motions.

2

("Panther") (see Lawrence Dep. at 49:7-49:14). Linda Arnone, also an independent contractor with Panther, was riding in the front passenger seat of the cab. (Tr. of Apr. 13, 2017, Dep. of Linda Arnone ("Arnone Dep.") at 10:22-11:20; 42:2-6.) Approximately a block before the corner where the accident occurred, Lawrence turned left on Guy R. Brewer Boulevard. (Lawrence Dep. at 129:2-130:6.) He proceeded north on Guy R. Brewer Boulevard in the lane closest to the double yellow line separating the two directions of traffic flow. (Id. at 155:2-158:3.) Plaintiff describes this lane as the left of two lanes (Pl. Mem. at 2, 4); Defendants aver that it was the only lane (Polner Aff. ¶¶ 6-8). Plaintiff was to the right of this lane, and drove alongside Lawrence for approximately one block. (Pl. Mem. at 4.) Plaintiff maintains that his headlights were on. (Pl. Mem. at 12 (citing Tr. of March 1, 2017 Dep. of Mike Colon ("Pl. Dep.") (Dkt. 24-10) at 47:7-9). Lawrence did not see any vehicle to his right side, even though he claims to have looked in his rearview mirrors. (Pl. Mem. at 3.)

Plaintiff states that he was driving about 20 miles per hour, and that the tractor-trailer was travelling between 15 and 25 miles per hour. (Pl. Mem. at 4.) Lawrence and Arnone, on the other hand, both claim that the tractor-trailer was moving at approximately 5 to 8 miles per hour. (Lawrence Dep. at 204:20-205:10; Arnone Dep. at 53:19-22.) Lawrence asserts that he activated his turn signal as he approached the intersection of 149th Road and Guy R. Brewer Boulevard (Lawrence Dep. at 171:16-173:18), but Plaintiff did not see a turn signal or any other indication that the tractor-trailer was about to make a turn (Pl. Mem. at 4). Plaintiff claims that he was planning on turning right onto 149th Road, and had begun to slow down in anticipation of that turn. (Id.) Shortly after he began his turn, however, his car collided with the tractor-trailer, which was also attempting to turn right onto 149th Road. (Id.) The rear passenger-side tires of the trailer came into contact with the driver's side of Plaintiff's car. (Police Accident Report; Pl.

Mem. at 4.) The impact caused Plaintiff's car to collide with a lamppost on the street corner. (Police Accident Report; Pl. Mem. at 4.) Plaintiff claims to have suffered serious injuries as a result of the accident, and to have accrued medical bills and missed work as a result. (Pl. Dep. 21:19-21; Compl. ¶ 55.)

**B.     Procedural History**

Plaintiff filed his complaint against Defendants in the Supreme Court of the State of New York, County of Queens on June 17, 2016, seeking damages arising from the accident. (Compl.) Plaintiff asserted that Defendants caused the accident through carelessness, recklessness, and negligence, and that he suffered serious injuries as a result. (Id. ¶¶ 54-55.) Defendants removed the case to this court on July 13, 2016 (Not. of Removal), and answered the complaint on July 19, 2016 (Answer). This court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because this action, now as when it began, is between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs (Not. of Removal).

Discovery proceeded before Magistrate Judge Robert M. Levy. Magistrate Judge Levy set the original fact discovery deadline as January 20, 2017, and the original expert discovery deadline as April 14, 2017. (Sept. 19, 2016 Minute Entry.) Defendants sought and received discovery deadline extensions for both fact and expert disclosures on several occasions. (See Jan. 19, 2017 Order Granting Motion for Extension of Time to Complete Discovery; Mar. 30, 2017 Order Granting Motion for Extension of Time to Complete Discovery; May 1, 2017 Order Granting Motion for Extension of Time to Complete Fact Discovery.) Magistrate Judge Levy denied Defendants' final request to extend the expert discovery deadline because Defendants did not show good cause for their failure to depose Plaintiff's medical expert. (See June 29, 2017

Order Granting Extension of Fact Discovery Deadline and Denying Extension of Expert Discovery Deadline.) Discovery was certified as complete on August 2, 2017. (Aug. 2, 2017 Order Certifying Disc. is Complete.)

Upon the close of discovery, Defendants filed their motion for summary judgment on November 2, 2017. (See Mot.) Plaintiffs filed their opposition on December 8, 2017 (Pl. Mem.), and Defendants replied on January 5, 2018 (Reply (Dkt. 28)). Defendants argue that Plaintiff was negligent as a matter of law because he violated the New York State Vehicle and Traffic Law, and that his claim cannot succeed because his negligence was the sole proximate cause of the accident. (See Mem.)

Plaintiff moved for sanctions on January 5, 2018, objecting to Defendants' inclusion of an expert affidavit attached as an exhibit to their Reply. (Mot. for Sanctions.) Plaintiff asserts that Defendants had not previously disclosed this expert, John Scott, and that the deadline for expert disclosure in this action expired on June 16, 2017. (Id. at 1.) Plaintiff therefore requests that the court preclude the expert testimony pursuant to Federal Rule of Civil Procedure 37(c)(1). (Id. at 2.) Defendants responded on January 8, 2018, arguing that Scott's expert testimony should be allowed in because Plaintiff raised a new theory of liability against Defendants in opposition to the motion for summary judgment. (Response in Opp'n to Mot. for Sanctions ("Sanctions Opp'n") (Dkt. 30).) On January 9, 2018, Plaintiff replied, asserting that preclusion is appropriate because Defendants' failure to disclose their expert within the deadline was prejudicial. (Reply in Support of Mot. for Sanctions ("Sanctions Reply") (Dkt. 31).)

## II. MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

A court will grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." Figueroa v. Mazza, 825 F.3d 89, 98 (2d Cir. 2016) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The movant may discharge this burden by showing that the nonmoving party has 'fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co., 255 F. Supp. 3d 443, 451 (S.D.N.Y. 2015) (alteration in original) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "'The mere existence of a scintilla of evidence' in support of the non-movant will be insufficient to defeat a summary judgment motion." Transflo Terminal Servs., Inc. v. Brooklyn Res. Recovery, Inc., 248 F. Supp. 3d 397, 399 (E.D.N.Y. 2017) (quoting Anderson, 477 U.S. at 252).

"In determining whether an issue is genuine, '[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion.'" SCW W. LLC v. Westport Ins. Corp., 856 F. Supp. 2d 514, 521 (E.D.N.Y. 2012) (quoting Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995)). "[T]he judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Redd v. N.Y. Div. of Parole, 678 F.3d 166, 173-74 (2d Cir. 2012) (quoting Anderson, 477 U.S.

at 249). However, "[a] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," and "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted).

**B.    Discussion**

Plaintiff has provided sufficient evidence for a reasonable juror to determine that Lawrence behaved negligently, and that this negligence contributed to the accident. Summary judgment is therefore inappropriate.

1.    Choice of Law

New York law applies to this action. See Krock v. Lipsay, 97 F.3d 640, 645 (2d Cir. 1996) ("[I]n diversity cases, federal courts must look to the laws of the forum state to resolve issues regarding conflicts of law."); Edwards v. Erie Coach Lines Co., 952 N.E.2d 1033, 1044 (N.Y. 2011) (holding that under New York law, "the place of the tort—here, New York—[i]s the 'normally applicable' choice" in tort cases arise out of automobile accidents (quoting Neumeier v. Kuehner, 286 N.E.2d 454, 458 (N.Y. 1972)).

2.    Negligence

To establish negligence under New York law, a plaintiff "must show: (1) that [a defendant] owed [him] a duty, or obligation, recognized by law, (2) a breach of the duty, (3) a reasonably close causal connection between [a defendant's] conduct and the resulting injury and (4) loss or damage resulting from the breach." McCarthy v. Olin Corp., 119 F.3d 148, 156 (2d Cir. 1997) (citation and quotation marks omitted). Alternatively, a plaintiff may establish negligence as a matter of law by showing that a defendant violated the New York Vehicle and

Traffic Law. See Vainer v. DiSalvo, 914 914 N.Y.S.2d 236, 237 (N.Y. App. Div. 2010) (citing Botero v. Erraez, 734 N.Y.S.2d 565, 565 (N.Y. App. Div. 2001); Ferrara v. Castro, 724 N.Y.S.2d 81, 81 (N.Y. App. Div. 2001); Packer v. Mirasola, 681 N.Y.S.2d 559, 559 (N.Y. App. Div. 1998)).

### a. Duty

The parties agree that, under New York law, Lawrence had a duty to properly use his senses to see what could be seen. (Mem. at 4; Pl. Mem. at 12.) See Mark v. New York City Transit Auth., 55 N.Y.S.3d 128, 128 (N.Y. App. Div. 2017) (citing Blair v. Coleman, 44 N.Y.S.3d 538, 538 (N.Y. App. Div. 2017); Twizer v. Lavi, 33 N.Y.S.3d 351, 351 (N.Y. App. Div. 2016); Mu-Jin Chen v. Cardenia, 31 N.Y.S.3d 134, 135 (N.Y. App. Div. 2016)).

### b. Breach

Plaintiff argues that Lawrence breached this duty by failing to see his car, which had its headlights on and was travelling beside the tractor-trailer for approximately a block before the accident occurred. (Pl. Mem. at 12 (citing Pl. Dep. at 56:15-25, 47:7-9).) Although Lawrence claims to have checked his rearview mirrors before initiating the right hand turn at issue (Mem. at 5), Plaintiffs apparently disputes this fact (Pl. Mem. at 12 ("[W]hen defendant Lawrence looked through the passenger side mirror of his vehicle—IF he looked through that mirror—he should have seen plaintiff's vehicle.").) If a juror believed that Plaintiff's lights were on and that he was travelling beside Lawrence's vehicle for at least a block, she could reasonably conclude that Lawrence failed to look in his mirror or failed to otherwise reasonably "see what c[ould] be seen," see Mark, 55 N.Y.S.3d at 130 (citing Blair, 44 N.Y.S.3d at 538; Twizer, 33 N.Y.S.3d at 351; Mu-Jin Chen, 31 N.Y.S.3d at 135). Plaintiff has therefore provided sufficient evidence for a reasonable juror to find that Lawrence breached his duty.

#### c. *Causation*

Plaintiff has similarly provided sufficient evidence for a jury to find that Lawrence's alleged negligence contributed to the car accident. Had Lawrence seen Plaintiff's car, he would not have turned in front of him, and the accident would not have occurred—whether Plaintiff was negligent or not. A jury could therefore reasonably find that Lawrence's alleged negligence in failing to see Plaintiff's car was a direct and proximate cause of the accident.

#### d. *Damages*

Defendants do not appear to dispute that Plaintiff suffered serious injuries as a result of this accident.

#### e. *Negligence as a matter of law*

Plaintiff has also provided sufficient evidence for a reasonable juror to conclude that Lawrence was negligent as a matter of law. Under New York law, a "violation of the Vehicle and Traffic law constitutes negligence as a matter of law." Vainer, 914 N.Y.S.2d at 237 (citing Botero, 734 N.Y.S.2d at 565; Ferrara, 724 N.Y.S.2d at 81; Packer, 681 N.Y.S.2d at 559); see also Basso v. Miller, 352 N.E.2d 868, 873 (N.Y. 1976). And New York Vehicle and Traffic law provides that "[b]oth the approach for a right turn and a right turn shall be made as close as practicable to the right hand curb or edge of the roadway or, where travel on the shoulder or slope has been authorized, from the shoulder or slope." N.Y. Vehicle and Traffic Law § 1160. A car turning right from the left of two driving lanes violates this law. See Vainer, 914 N.Y.S.2d at 237 (finding that the driver of a vehicle that "made a sudden right turn from the left lane" in violation of, inter alia, New York Vehicle and Traffic Law § 1160(a) was negligent as a matter of law).

As noted above, the parties dispute whether Lawrence was driving in the left hand of two driving lanes or in the only permissible driving lane. (See Pl. Mem. at 2; Polner Aff. ¶¶ 6-9). If a juror believed that there were two lanes, she could reasonably find that Lawrence violated New York Vehicle and Traffic Law § 1160 by turning right from the left-hand lane. Alternatively, even if she believed that there was only one lane, that juror could find that Lawrence violated that law by failing to make the turn as close to the right curb as practicable. Either finding would be sufficient to establish negligence as a matter of law.

### 3. Plaintiff's Alleged Negligence

New York law adopts a theory of pure comparative fault, so contributory negligence of a plaintiff does not bar recovery. See N.Y. C.P.L.R. § 1411. Rather, the amount of damages recoverable by the plaintiff is decreased by the proportion of his contributory negligence to the action. See id. This means that, in theory, "a plaintiff who is 99% responsible for his own injuries may still recover 1% of his damages." Alexander, Practice Commentary, McKinney's Cons. Laws of N.Y., Book 7B, N.Y. C.P.L.R. § 1411. There can be more than one proximate cause of a car accident. See Turturro v. City of New York, 68 N.E.3d 693, 704 (N.Y. 2016).

If a jury did find that Lawrence was negligent, Plaintiff could recover—even if he was also negligent—so long as Lawrence's negligence contributed to the accident. As discussed above, a reasonable juror could conclude that Lawrence's alleged negligence at least contributed to the accident. This claim thus survives summary judgment regardless of whether Plaintiff was negligent.

## III. MOTION FOR SANCTIONS

Plaintiff objects to Defendants' inclusion of the affidavit of John C. Scott, a purported expert in accident reconstruction, as an exhibit to their Reply in the otherwise fully briefed

motion for summary judgment. (Mot. for Sanctions.) Plaintiff asserts that Defendants had not previously disclosed this expert, John Scott, and that the deadline for expert disclosure in this action expired on June 16, 2017. (Id. at 1.) Plaintiff therefore requests that the court preclude the expert testimony pursuant to Federal Rule of Civil Procedure 37(c)(1). (Id. at 2.) Federal Rule of Civil Procedure 37(c)(1) provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Under Rule 26(a)(2), parties must disclose the identity of any expert witness pursuant to court scheduling orders.

Defendants' failure to disclose was neither substantially justified nor harmless. Substantial justification exists where parties could reasonably differ as to whether disclosure was required or if there exists a genuine dispute concerning compliance. Lujan v. Cabana Manage Mgmt., Inc., 284 F.R.D. 50, 68 (E.D.N.Y. 2012); Ritchie Risk-Limited Strategies Trading (Ireland), Ltd. v. Coventry First LLC, 280 F.R.D. 147, 159 (S.D.N.Y. 2012). Defendants do not dispute that Scott falls under the requirements of Rules 26 and 37, or that they failed to disclose Scott's expert testimony by the expert disclosure date set by Magistrate Judge Levy. Rather, they argue that this failure to disclose was warranted because Plaintiff introduced a new theory of liability in his opposition to their motion for summary judgment. (Sanctions Opp'n at 1.) This supposed new theory is that Lawrence violated a specific section of New York State Vehicle and Traffic Law, § 1160, by failing to remain as close to the right of the road as possible while turning right. (Id.; Opp'n at 13-14.)

It is true that Plaintiff raises this theory of negligence for the first time in opposition to Defendants' summary judgment motion; however, the theory is merely an alternate route to

11

prove an existing claim, not a wholly new claim. Plaintiff remains free to attempt to prove negligence in any way he chooses. Further, only a small part of Scott's testimony relates to this theory of liability. (See Aff. of John C. Scott in Support of Mot. for Sum. J. ("Scott Aff.") (Dkt. 28-2) ¶ 7.) The one paragraph of the testimony that does address the new theory of liability touches on issues introduced—at the latest—at Lawrence's deposition, which occurred three months before the expert disclosure deadline. (Lawrence Dep. at 161:6-21, 168:13-169:23 (discussing the turning radius of the truck and that he moved the truck left before initiating the right turn at issue).) Defendants have not offered any explanation for why they did not seek expert testimony in the months between that deposition and the expert disclosure deadline. Moreover, the bulk of Scott's affidavit discusses issues relating to Plaintiff's original theory of negligence. These include the number of driving lanes on Guy R. Brewer Boulevard (id. ¶¶ 6, 14), the travel speeds and positions of the two involved vehicles (id. ¶¶ 9-13), and Plaintiff's alleged violation of New York Vehicle and Traffic Law (id. ¶ 14). Defendants' proffered explanation, therefore, does not even attempt to justify the majority of Scott's testimony.

Additionally, Defendants' failure to disclose was not harmless. As a result of that failure, Plaintiff was unable to depose Scott or to hire an expert of his own to address the same facts. Plaintiff was also unable to address any issues raised by Scott's affidavit in their opposition to Defendants' motion for summary judgment.

Having found that Defendants' failure to disclose was neither substantially justified nor harmless, the court turns to whether preclusion is the appropriate remedy. "[P]recluding evidence is a 'drastic' remedy that 'should be exercised with caution.'" New World Solutions, Inc. v. NameMedia, Inc., 150 F. Supp. 3d 287, 306 (S.D.N.Y. 2015) (quoting DVL, Inc. v. Gen. Elec. Co., 811 F. Supp. 2d 479, 589 (N.D.N.Y. 2010), aff'd sub nom. DVL, Inc. v. Niagara

Mohawk Power Corp., 490 Fed. Appx. 378 (2d Cir. 2012)). To determine whether preclusion is appropriate under Rule 37, this court will consider:

> (1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witnesses; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.

Design Strategy, Inc. v. Davis, 469 F.3d 284, 296 (2d Cir. 2006) (quoting Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006) (alterations adopted)). The court will address each of these factors in turn.

### 1. Defendants' Explanation

This factor weighs in favor of preclusion. As previously noted, Defendants' explanation for their failure to disclose does not attempt to justify the majority of Scott's testimony. The testimony that the explanation does address, moreover, relates to facts Lawrence discussed in his deposition three months prior to the expert disclosure deadline (and eight months before Defendants submitted Scott's affidavit) (Lawrence Dep. at 161:6-21, 168:13-169:23). Defendants have not explained why, if expert testimony was needed to address that question, they could not have sought expert testimony at that time.

### 2. The Importance of Scott's Expert Testimony

Defendants do not address the importance of Scott's expert testimony. However, it appears that they have other potential evidence to prove all of the facts discussed in that testimony. Both Lawrence and Arnone have driven the involved truck on multiple occasions and can testify from personal experience about the clearance necessary to complete a successful right turn in it. Both were also present for the accident and can testify about the specific right turn involved. In fact, as previously noted, Lawrence discussed the space needed to turn right in this particular truck during his deposition. (Lawrence Dep. at 161:6-21, 168:13-169:23.) Of course,

neither may testify as an expert, and Scott might have proved more credible to a jury than either Lawrence or Arnone, who have some degree of personal involvement in the matter. Nonetheless, Defendants will still be able to provide evidence that Lawrence did not break a New York State Vehicle and Traffic Law even without Scott's testimony. Courts in this circuit have previously found that the ability to introduce other evidence as to the relevant issues diminishes the importance of the disputed evidence. See, e.g., Downey v. Adlookx Inc., 16-CV-1689 (JMF), 2018 WL 794592, at *2 (S.D.N.Y. Feb. 8, 2018); In re General Motors LLC Ignition Switch Litigation, 14-MD-2543 (JMF), 2017 WL 2880882, at *3 (S.D.N.Y. July 5, 2017). The same logic applies here.

Scott's testimony regarding other facts is even less important. Some of it may not be admissible at trial, as it contains legal conclusions. (See, e.g., Scott Aff. ¶ 5 ("Mr. Colon was operating his vehicle in an unreasonable and unsafe manner and violating New York Motor Vehicle Traffic Laws . . . .").) Additionally, Defendants will be able to introduce other evidence about the width of Guy R. Brewer Boulevard and the position and speed of the vehicles, including from the testimony of Lawrence, Arnone, and Scott Galligan, the New York City Police Officer who responded to the scene (see Tr. of May 20, 2017 Dep. of Scott Galligan). This factor does not, therefore, weigh in Defendants' favor.

    3.    <u>Prejudice Suffered by Plaintiff</u>

Plaintiff states:

> [P]laintiff has been prejudiced by the defendants' failure to disclose their expert within the disclosure deadline because [he] was denied the opportunity (1) to depose the defendants' witness, (2) to retain his own expert in response to the defendants' expert, and (3) to address the issues raised by the expert in his opposition to the defendants' motion for summary judgment.

(Sanctions Reply at 1.) These are all valid concerns. In particular, being denied the opportunity to depose an expert witness would leave Plaintiff in an unfairly weakened position for trial. See, e.g., Williams v. Bethel Springvale Nurson Home, Inc., 14-CV-9383 (NSR), 2018 WL 1662644, at *5 (S.D.N.Y. Apr. 5, 2018) ("Where, as here, an individual is not identified as a potential witness . . . until after the close of discovery, the offending party subverts the purpose of mandatory disclosures and undoubtedly prejudices their opponent." (emphasis in original)); Rivera v. United Parcel Serv., 325 F.R.D. 542, 548 (S.D.N.Y. 2018) (finding that the defendants had suffered prejudice from the plaintiff's failure to timely disclose because "[if] [the untimely disclosed witnesses] possess relevant information, Defendants are entitled to obtain their testimony under oath and, possibly, use their deposition testimony in a later motion or trial"). And as discussed in greater detail below, reopening discovery now "would result in further substantial delays to the resolution to this case and impose additional costs on [Plaintiff]." Kodak Graphic Commc'ns Can. Co. v. E.I. Du Pont de Nemours and Co., No. 08–CV–6553, 2013 WL 5739041, at *6 (W.D.N.Y. Oct. 22, 2013).

This factor therefore cuts strongly in favor of preclusion.

4. The Possibility of a Continuance

Defendants first introduced this testimony in their reply brief for an otherwise fully briefed motion for summary judgment. At that time, discovery had been completed for approximately five months, and the case had been pending for about a year and a half. During discovery, Defendants sought and received deadline extensions for both factual and expert disclosures on several occasions. (See Jan. 19, 2017 Order Granting Motion for Extension of Time to Complete Discovery; Mar. 30, 2017 Order Granting Motion for Extension of Time to Complete Discovery; May 1, 2017 Order Granting Motion for Extension of Time to Complete

15

Fact Discovery.) Magistrate Judge Levy denied Defendants' final request to extend the expert discovery deadline because Defendants did not show good cause for the failure to depose Plaintiff's medical expert. (See June 29, 2017 Order Granting Extension of Fact Discovery Deadline and Denying Extension of Expert Discovery Deadline.) At no time—in any of these requests—did Defendants suggest the need for an accident reconstruction expert like Scott.

The closure of discovery weighs strongly against any possibility of a continuance. See, e.g., Reinzi & Sons, Inc. v. N. Puglisi & F. Industria Paste Alientari SPA, No. 08-CV-2540 (DLI), 2011 WL 1239867, at *4 (E.D.N.Y. Mar. 30, 2011); Spotnana, Inc. v. Am. Talent Agency, Inc., No. 09-CV-3698 (LAP), 2010 WL 3341837, at *2 (S.D.N.Y. Aug. 7, 2010). Courts in similar situations have found that the impracticability of a continuance weighed in favor of preclusion. See, e.g., Downey, 2018 WL 794592, at *2 (precluding additional witness testimony where "the case ha[d] been pending for over twenty-three months, the parties were granted three extensions of the discovery deadline and had ample time to do whatever they needed to do, and fact discovery ha[d] been closed for almost three months"); New World Solutions, 150 F. Supp. 3d at 308-09 (finding that a continuance was not appropriate where the parties were in the middle of a summary judgment briefing schedule and where, at the time the disputed testimony was submitted, "discovery had been closed for nearly a year"); Spotnana, 2010 WL 3341837, at *2 (noting that "the closure of discovery four months ago weighs strongly against the possibility of a continuance"). While the court could theoretically reopen discovery at this time, doing so would unduly delay proceedings and drain the court's and the parties' resources. Thus, this factor also weighs in favor of preclusion.

After consideration of all four Patterson factors, the court concludes that Defendants should not be permitted to call Scott as an expert witness in this case.[3] Although preclusion is a harsh sanction, see New World Solutions, 150 F. Supp. 3d at 304, it is warranted here.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is DENIED. Plaintiff's motion for sanctions is GRANTED, and Defendants are precluded from calling Scott as a witness. The parties are directed to contact Magistrate Judge Robert M. Levy's chambers to schedule a conference regarding next steps in this case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
February 25, 2019

NICHOLAS G. GARAUFIS
United States District Judge

---

[3] Additionally, the court did not consider Scott's affidavit in deciding Defendants' motion for summary judgment.